UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAY 12 2014

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. 14 CR 194 |
| RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., and EDWIDGE JACINTHE, M.D., | § § § § § § | UNDER SEAL |
| Defendants. | | |



Sealed
Public and unofficial staff access to this instrument are prohibited by court order

PER ARREST

### INDICTMENT

The Grand Jury charges:

At all times material to this Indictment, unless otherwise specified:

### General Allegations

1.   The Medicare Program ("Medicare") was a federal healthcare program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.   Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.   Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

1

4.  Home health agencies and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers."

5.  To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6.  Medicare was subdivided into multiple parts. Part A covered home health services, including but not limited to skilled nursing, physical therapy, occupational therapy, medical social services, and speech pathology services provided by a certified home health agency in connection with the treatment of homebound patients. Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A.

7.  A patient qualifies for home healthcare benefits only if: (a) the patient was confined to the home, also referred to as homebound; (b) the patient was under the care of a physician who specifically determined that there was a need for home health care and established the Plan of Care ("POC"); and (c) the determining physician signed a certification statement specifying: (i) the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy, (ii) the beneficiary was homebound, (iii) a POC for furnishing services was established and periodically reviewed, and (iv) the

services were furnished while the beneficiary was under the care of the physician who established the POC.

8. Medicare paid home health agencies and other health care providers for services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

9. CMS contracted with Medicare Administrative Contractors ("MACs") to process claims for payment. The MAC that processed and paid Medicare Part A claims for home health care services in Texas was Palmetto GBA ("Palmetto").

10. To receive reimbursement for a covered service from Medicare, a provider submitted a claim containing the required information appropriately identifying the provider, patient, and services rendered. When a claim was submitted, usually in electronic form, the provider certified that: (1) the contents of the form were true, correct, and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary. Providers were required to maintain patient records to verify that the services were provided as described on the claim form.

11. A Medicare claim for home health care services reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the service provided to the beneficiary, the date that the service was provided, the name and unique physician identification number of the physician who determined that there was a need for home health care services.

3

### Home Health Agencies

12. Allied Covenant Home Health, Inc. ("Allied") was a home health agency doing business at 8323 Southwest Freeway, Houston, Texas. From in or around April 2007 through May 2013, Allied submitted claims to Medicare totaling approximately $8.1 million.

13. Harris Health Care Group, PLLC ("Harris Healthcare"), was a medical clinic doing business at 8323 Southwest Freeway, Houston, Texas. From in or around April 2007 through May 2013, Harris Healthcare submitted claims to Medicare totaling approximately $7.8 million.

### Defendants

14. Defendant **RONALD F. KAHN, M.D.**, a resident of Harris County, Texas, is a medical doctor licensed by the State of Texas. **RONALD F. KAHN, M.D.**, among other activities, signed POCs so that fraudulent claims could be billed to Medicare by Allied for services that were not medically necessary and, in many cases, not rendered.

15. Defendant **MELANIE MENCER PARKS, M.D.**, a resident of Brazoria County, Texas, is a medical doctor licensed by the State of Texas. **MELANIE MENCER PARKS, M.D.**, among other activities, signed POCs so that fraudulent claims could be billed to Medicare by Allied for services that were not medically necessary and, in many cases, not rendered.

16. Defendant **MARIO BERTONI, M.D.**, a resident of Brazoria County, Texas, is a medical doctor licensed by the State of Texas. **MARIO BERTONI, M.D.**, among

other activities, signed POCs so that fraudulent claims could be billed to Medicare by Allied for services that were not medically necessary and, in many cases, not rendered.

17. Defendant **EDWIDGE JACINTHE, M.D.**, a resident of Harris County, Texas, is a medical doctor licensed by the State of Texas. **EDWIDGE JACINTHE, M.D.**, among other activities, signed POCs so that fraudulent claims could be billed to Medicare by Allied for services that were not medically necessary and, in many cases, not rendered.

### COUNT 1
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

### The Conspiracy

18. Paragraphs 1 through 17 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19. Beginning in or around June 2006, and continuing through in or around May 2013, the exact dates being unknown to the Grand Jury, at Harris County, in the Southern District of Texas, and elsewhere, defendants,

**RONALD F. KAHN, M.D.,**
**MELANIE MENCER PARKS, M.D.,**
**MARIO BERTONI, M.D., and**
**EDWIDGE JACINTHE, M.D.**

did knowingly and willfully combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting

commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items, and services.

## Purpose of the Conspiracy

20.     It was a purpose of the conspiracy for each defendant and his or her co-conspirators to unlawfully enrich themselves by, among other things, (a) providing false and fraudulent medical certifications and POCs and arranging for the use of Medicare beneficiary numbers as the bases of claims filed for home healthcare; (b) causing the submission and concealment of false and fraudulent claims to Medicare, and the receipt and transfer of the proceeds from the fraud; and (c) causing the diversion of the proceeds of the fraud for the personal use and benefit of each defendant and his or her co-conspirators.

## Manner and Means of the Conspiracy

21.     The manner and means by which each defendant sought to accomplish the purpose of the conspiracy included, among other things:

22.     Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., EDWIDGE JACINTHE, M.D.** and other co-conspirators, known and unknown, would make it appear that Medicare beneficiaries qualified for and received services that were not medically necessary or not provided.

23. Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., EDWIDGE JACINTHE, M.D.**, and others, would sign POCs for Medicare beneficiaries. The POCs would falsely state that the patients were homebound and that home health was medically necessary without regard for their actual medical conditions, or whether home healthcare services were medically necessary. Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., EDWIDGE JACINTHE, M.D.**, and others, would frequently sign POCs for Medicare beneficiaries who were not under their care and whom they had not seen.

24. In return for signing POCs, co-conspirators, known and unknown, would provide payments or other remuneration to Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D.,** and **EDWIDGE JACINTHE, M.D.**

25. Among the co-conspirators who would provide payments or other remuneration to Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., EDWIDGE JACINTHE, M.D.** was Charles Harris, the owner of Harris Healthcare.

26. Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D.,** and **EDWIDGE JACINTHE, M.D.** and other co-conspirators, known and unknown, would then submit, or cause the submission of, fraudulent claims to Medicare by billing for home health services, including skilled

nursing, for Medicare beneficiaries when such services were not medically necessary and, in many cases, not provided. As a result, Medicare would pay approximately $1,476,827.63 to Allied based on claims for home healthcare services purportedly provided by Allied, when such services were not medically necessary, and, in many cases, not provided and where one of the Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., or EDWIDGE JACINTHE, M.D.** was listed as the referring physician.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-13
### False Statements Relating to Health Care Matters
### (Violation of 18 U.S.C. §§ 1035 and 2)

27.    Paragraphs 1 through 26 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

28.    On or about the dates set forth below, in Harris County, in the Southern District of Texas, and elsewhere, the defendants,

**MELANIE MENCER PARKS, M.D.,
MARIO BERTONI, M.D., and
EDWIDGE JACINTHE, M.D.**

aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, as set forth below, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in

connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program, specifically Medicare:

| Count | Defendant | Medicare Beneficiary | Home Health Agency | Certification Period | Description | Approximate Medicare Payment |
|---|---|---|---|---|---|---|
| 2 | **Mencer Parks** | C.J. | Allied | 06/08/10 – 08/06/10 | Certification | $5,234.79 |
| 3 | **Mencer Parks** | C.J. | Allied | 08/07/10- 10/05/10 | Recertification | $3,209.62 |
| 4 | **Mencer Parks** | C.T. | Allied | 06/11/10- 08/09/10 | Certification | $5,197.22 |
| 5 | **Mencer Parks** | G.S. | Allied | 08/30/10- 10/28/10 | Certification | $5,363.76 |
| 6 | **Mencer Parks** | P.B. | Allied | 06/09/10- 08/07/10 | Certification | $5,197.22 |
| 7 | **Mencer Parks** | P.B. | Allied | 08/08/10- 10/06/10 | Recertification | $5,197.22 |
| 8 | **Bertoni** | G.S. | Allied | 12/28/20- 02/25/11 | Recertification | $5,373.94 |
| 9 | **Bertoni** | P.B. | Allied | 12/06/10- 02/03/11 | Recertification | $5,373.94 |
| 10 | **Jacinthe** | E.P. | Allied | 02/18/11- 04/18/11 | Certification | $1008.74 |
| 11 | **Jacinthe** | P.B. | Allied | 02/04/11- 04/04/11 | Recertification | $5,373.94 |
| 12 | **Jacinthe** | H.W. | Allied | 01/29/11- 03/29/11 | Recertification | $3,818.36 |
| 13 | **Jacinthe** | R.J. | Allied | 03/24/11- 05/22/11 | Recertification | $4,063.93 |

All in violation of Title 18, United States Code, Sections 1035 and 2.

## COUNTS 14-16
## Anti-Kickback Statute
## (Violation of 42 U.S.C. § 1320a-7b(b), 18 U.S.C. § 2)

29.     Paragraphs 1 through 26 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

30.     On or about the dates enumerated below, in Harris County, in the Southern District of Texas, and elsewhere, the defendant

### MARIO BERTONI, M.D.

and their co-conspirators, including Charles Harris, aiding and abetting others known and unknown to the Grand Jury, as set forth below, did knowingly and willfully offer and pay and did knowingly and willfully solicit and receive remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare:

| Count | Defendant(s) | On or about Date | Approximate Amount of Kickback |
|---|---|---|---|
| 14 | **MARIO BERTONI, M.D.** paid Charles Harris | November 19, 2010 | $1,575.30 |
| 15 | **MARIO BERTONI, M.D.** paid Charles | November 23, 2010 | $3,969.53 |

| Count | Defendant(s) | On or about Date | Approximate Amount of Kickback |
|---|---|---|---|
|  | Harris |  |  |
| 16 | **MARIO BERTONI, M.D.** paid Charles Harris | December 13, 2010 | $1,088.41 |

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

31. The allegations contained in paragraphs 1-30 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest.

32. Upon conviction of any federal healthcare offense, the defendant shall forfeit to the United States property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

33. The property which is subject to forfeiture includes but is not limited to a money judgment in the amount of approximately $1,476,827.63.

34. Pursuant to Title 21 United States Code, Section 853(p), as incorporated by reference by Title 18, United States Code, Section 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred, or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D.,** and **EDWIDGE JACINTHE, M.D.**

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

            A TRUE BILL
            Original signature on File
            FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

ASHLEE CALIGONE MCFARLANE
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE