UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
AUG 2 0 2014
David J. Bradley, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Criminal No. H-14-00194-S |
| § | |
| RONALD F. KAHN, M.D., § | |
| MELANIE MENCER PARKS, M.D., § | |
| MARIO BERTONI, M.D., and § | |
| EDWIDGE JACINTHE, M.D., § | |
| § | |
| Defendants. | |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

At all times material to this Superseding Indictment, unless otherwise specified:

### General Allegations

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Individuals who received benefits under Medicare were referred to as Medicare beneficiaries.

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Individuals who received benefits under Medicare were referred to as Medicare beneficiaries.

1

4. Home health agencies and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare providers.

5. To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare provider number. A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6. Medicare was subdivided into multiple parts. Part A covered home health services, including but not limited to skilled nursing, physical therapy, occupational therapy, medical social services, and speech pathology services provided by a certified home health agency in connection with the treatment of homebound patients. Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A.

7. A patient qualifies for home health care benefits only if: (a) the patient was confined to the home, also referred to as homebound; (b) the patient was under the care of a physician who specifically determined that there was a need for home health care and established the Plan of Care ("POC"); and (c) the determining physician signed a certification statement specifying: (i) the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy, (ii) the beneficiary was homebound, (iii) a POC for furnishing services was established and periodically reviewed, and (iv) the

services were furnished while the beneficiary was under the care of the physician who established the POC.

8. Medicare paid home health agencies and other health care providers for services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

9. CMS contracted with Medicare Administrative Contractors ("MACs") to process claims for payment. The MAC that processed and paid Medicare Part A claims for home health care services in Texas was Palmetto GBA.

10. To receive reimbursement for a covered service from Medicare, a provider submitted a claim containing the required information appropriately identifying the provider, patient, and services rendered. When a claim was submitted, usually in electronic form, the provider certified that: (1) the contents of the form were true, correct, and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary. Providers were required to maintain patient records to verify that the services were provided as described on the claim form.

11. A Medicare claim for home health care services reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the service provided to the beneficiary, the date that the service was provided, the name and unique physician identification number of the physician who determined that there was a need for home health care services.

## Home Health Agencies

12. Allied Covenant Home Health, Inc. ("Allied") was a home health agency doing business at 8323 Southwest Freeway, Houston, Texas. From in or around April 2007 through May 2013, Allied submitted claims to Medicare totaling approximately $8.1 million.

13. Harris Health Care Group, PLLC ("Harris Healthcare"), was a medical clinic doing business at 8323 Southwest Freeway, Houston, Texas. From in or around April 2007 through May 2013, Harris Healthcare submitted claims to Medicare totaling approximately $7.8 million.

## Defendants

14. Defendant **RONALD F. KAHN, M.D.**, a resident of Harris County, Texas, is a medical doctor licensed by the State of Texas. **RONALD F. KAHN, M.D.**, among other activities, signed POCs so that fraudulent claims could be billed to Medicare by Allied for services that were not medically necessary and, in many cases, not rendered.

15. Defendant **MELANIE MENCER PARKS, M.D.**, a resident of Brazoria County, Texas, is a medical doctor licensed by the State of Texas. **MELANIE MENCER PARKS, M.D.**, among other activities, signed POCs so that fraudulent claims could be billed to Medicare by Allied for services that were not medically necessary and, in many cases, not rendered.

16. Defendant **MARIO BERTONI, M.D.**, a resident of Brazoria County, Texas, is a medical doctor licensed by the State of Texas. **MARIO BERTONI, M.D.**,

among other activities, signed POCs so that fraudulent claims could be billed to Medicare by Allied for services that were not medically necessary and, in many cases, not rendered.

17. Defendant **EDWIDGE JACINTHE, M.D.**, a resident of Harris County, Texas, is a medical doctor licensed by the State of Texas. **EDWIDGE JACINTHE, M.D.**, among other activities, signed POCs so that fraudulent claims could be billed to Medicare by Allied for services that were not medically necessary and, in many cases, not rendered.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349)

### The Conspiracy

18. Paragraphs 1 through 17 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

19. Beginning in or around June 2006, and continuing through in or around May 2013, the exact dates being unknown to the Grand Jury, at Harris County, in the Southern District of Texas, and elsewhere, defendants,

**RONALD F. KAHN, M.D.,
MELANIE MENCER PARKS, M.D.,
MARIO BERTONI, M.D., and
EDWIDGE JACINTHE, M.D.**

did knowingly and willfully combine, conspire, confederate and agree with others, known

and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

20. It was a purpose of the conspiracy for each defendant and his or her co-conspirators to unlawfully enrich themselves by, among other things, (a) providing false and fraudulent medical certifications and POCs and arranging for the use of Medicare beneficiary numbers as the bases of claims filed for home health care; (b) causing the submission and concealment of false and fraudulent claims to Medicare, and the receipt and transfer of the proceeds from the fraud; and (c) causing the diversion of the proceeds of the fraud for the personal use and benefit of each defendant and his or her co-conspirators.

### Manner and Means of the Conspiracy

The manner and means by which each defendant sought to accomplish the purpose of the conspiracy included, among other things:

21. Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., EDWIDGE JACINTHE, M.D.** and other co-

conspirators, known and unknown, would make it appear that Medicare beneficiaries qualified for and received services that were not medically necessary or not provided.

22. Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., EDWIDGE JACINTHE, M.D.**, and others, would sign POCs for Medicare beneficiaries. The POCs would falsely state that the patients were homebound and that home health was medically necessary without regard for their actual medical conditions, or whether home health care services were medically necessary. Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., EDWIDGE JACINTHE, M.D.**, and others, would frequently sign POCs for Medicare beneficiaries who were not under their care and whom they had not seen.

23. In return for signing POCs, co-conspirators, known and unknown, would provide payments or other remuneration to Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., and EDWIDGE JACINTHE, M.D.**

24. Among the co-conspirators who would provide payments or other remuneration to Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., and EDWIDGE JACINTHE, M.D.** was Charles Harris, the owner of Harris Healthcare.

25. Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D., and EDWIDGE JACINTHE, M.D.** and other co-

conspirators, known and unknown, would then submit, or cause the submission of, fraudulent claims to Medicare by billing for home health services, including skilled nursing, for Medicare beneficiaries when such services were not medically necessary and, in many cases, not provided. As a result, Medicare would pay approximately $1,476,827.63 to Allied based on claims for home health care services purportedly provided by Allied, when such services were not medically necessary, and, in many cases, not provided and where one of the Defendants **RONALD F. KAHN, M.D., MELANIE MENCER PARKS, M.D., MARIO BERTONI, M.D.,** or **EDWIDGE JACINTHE, M.D.** was listed as the referring physician.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-13
### False Statements Relating to Health Care Matters
### (Violation of 18 U.S.C. §§ 1035 and 2)

26. Paragraphs 1 through 17 and 20 through 25 of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

27. On or about the dates set forth below, in Harris County, in the Southern District of Texas, and elsewhere, the defendants,

**MELANIE MENCER PARKS, M.D.,**
**MARIO BERTONI, M.D., and**
**EDWIDGE JACINTHE, M.D.**

aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, as set forth below, knowing

the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program, specifically Medicare:

| Count | Defendant | Medicare Beneficiary | Home Health Agency | Certification Period | Description | Approximate Medicare Payment |
|---|---|---|---|---|---|---|
| 2 | Mencer Parks | C.J. | Allied | 06/08/10 – 08/06/10 | Certification | $5,234.79 |
| 3 | Mencer Parks | C.J. | Allied | 08/07/10- 10/05/10 | Recertification | $3,209.62 |
| 4 | Mencer Parks | C.T. | Allied | 06/11/10- 08/09/10 | Certification | $5,197.22 |
| 5 | Mencer Parks | G.S. | Allied | 08/30/10- 10/28/10 | Certification | $5,363.76 |
| 6 | Mencer Parks | P.B. | Allied | 06/09/10- 08/07/10 | Certification | $5,197.22 |
| 7 | Mencer Parks | P.B. | Allied | 08/08/10- 10/06/10 | Recertification | $5,197.22 |
| 8 | Bertoni | G.S. | Allied | 12/28/10- 02/25/11 | Recertification | $5,373.94 |
| 9 | Bertoni | P.B. | Allied | 12/06/10- 02/03/11 | Recertification | $5,373.94 |
| 10 | Jacinthe | E.P. | Allied | 02/18/11- 04/18/11 | Certification | $1008.74 |
| 11 | Jacinthe | P.B. | Allied | 02/04/11- 04/04/11 | Recertification | $5,373.94 |
| 12 | Jacinthe | H.W. | Allied | 01/29/11- 03/29/11 | Recertification | $3,818.36 |
| 13 | Jacinthe | R.J. | Allied | 03/24/11- 05/22/11 | Recertification | $4,063.93 |

All in violation of Title 18, United States Code, Sections 1035 and 2.

## COUNT 14
## Conspiracy to Pay and Receive Health Care Kickbacks
## (18 U.S.C. § 371)

28. From in or about October 2008, through in or about February 2010, the exact dates being unknown, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**RONALD F. KAHN, M.D.**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the grand jury, to commit certain offenses against the United States, that is,

    a.    to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

## Purpose of The Conspiracy

29. Paragraphs 1 through 17 and 20 through 25 of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

30. It was a purpose of the conspiracy for the defendant **RONALD F. KAHN, M.D.** and his co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks in exchange for the referral of Medicare beneficiaries for whom defendant **RONALD F. KAHN, M.D.** would submit claims to Medicare.

## Manner and Means of the Conspiracy

The manner and means by which the defendant **RONALD F. KAHN, M.D.** and others sought to accomplish the purpose and object of the conspiracy included, among other things:

31. Defendant **RONALD F. KAHN, M.D.** would pay kickbacks to Charles Harris in exchange for Charles Harris referring Medicare beneficiaries to defendant **RONALD F. KAHN, M.D** to receive facet joint injections and other pain management procedures that were not medically necessary and in some cases, were never provided.

32. Defendant **RONALD F. KAHN, M.D.** would submit claims to Medicare for facet joint injections and other pain management procedures purportedly provided to the Medicare beneficiaries referred by the Charles Harris.

33. Defendant **RONALD F. KAHN, M.D.** would submit and cause to be submitted at least $96,000 in claims to Medicare for facet joint injections and other pain management procedures purportedly provided by defendant **RONALD F. KAHN, M.D.**

to Medicare beneficiaries that Charles Harris referred to defendant **RONALD F. KAHN, M.D.**

34. Defendant **RONALD F. KAHN, M.D.** would transfer and cause the transfer and disbursement of illicit proceeds derived from the fraudulent billing scheme to himself, Charles Harris, and others.

### Overt Acts

35. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

    a. On or about November 11, 2008, defendant **RONALD F. KAHN, M.D.**, paid and caused the payment of $168.17 to Charles Harris in exchange for Charles Harris referring Medicare beneficiaries to defendant **RONALD F. KAHN, M.D.** to receive facet joint injections and other pain management procedures.

    b. On or about November 25, 2008, defendant **RONALD F. KAHN, M.D.**, paid and caused the payment of $780.83 to Charles Harris in exchange for Charles Harris referring Medicare beneficiaries to defendant **RONALD F. KAHN, M.D.** to receive facet joint injections and other pain management procedures.

    c. On or about August 18, 2009, defendant **RONALD F. KAHN, M.D.**, paid and caused the payment of $272.76 to Charles Harris in exchange for Charles Harris referring Medicare beneficiaries to defendant **RONALD F. KAHN, M.D.** to receive facet joint injections and other pain management procedures.

d. On or about February 2, 2010, defendant **RONALD F. KAHN, M.D.**, paid and caused the payment of $494.89 to Charles Harris in exchange for Charles Harris referring Medicare beneficiaries to defendant **RONALD F. KAHN, M.D.** to receive facet joint injections and other pain management procedures.

All in violation of Title 18, United States Code, Section 371.

## COUNT 15
### Conspiracy to Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

36. From in or about November 2010, through in or about January 2011, the exact dates being unknown, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**MARIO BERTONI, M.D.**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the grand jury, to commit certain offenses against the United States, that is,

a. to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending

the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of The Conspiracy

37. Paragraphs 1 through 17 and 20 through 25 of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

38. It was a purpose of the conspiracy for the defendant **MARIO BERTONI, M.D.** and his co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks in exchange for the referral of Medicare beneficiaries for whom defendant **MARIO BERTONI, M.D.** would submit claims to Medicare.

### Manner and Means of the Conspiracy

The manner and means by which the defendant **MARIO BERTONI, M.D.** and others sought to accomplish the purpose and object of the conspiracy included, among other things:

39. Defendant **MARIO BERTONI, M.D.** would pay kickbacks to Charles Harris in exchange for Charles Harris referring Medicare beneficiaries to defendant **MARIO BERTONI, M.D.** to receive home health care supervision, diagnostic tests and other medical examinations or services that were not medically necessary and in some cases, were never provided.

40. Defendant **MARIO BERTONI, M.D.** would submit claims to Medicare for home health care supervision, diagnostic tests and other medical examinations or

services purportedly provided to the Medicare beneficiaries referred by the Charles Harris.

41. Defendant **MARIO BERTONI, M.D.** would submit and cause to be submitted at least $56,000 in claims to Medicare home health care supervision, diagnostic tests and other medical examinations or services purportedly provided by defendant **MARIO BERTONI, M.D.** to Medicare beneficiaries that Charles Harris referred to defendant **MARIO BERTONI, M.D.**

42. Defendant **MARIO BERTONI, M.D.** would transfer and cause the transfer and disbursement of illicit proceeds derived from the fraudulent billing scheme to himself, Charles Harris, and others.

## Overt Acts

43. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

   a. On or about November 19, 2010, defendant **MARIO BERTONI, M.D.**, paid and caused the payment of $1,575.30 to Charles Harris in exchange for Charles Harris referring Medicare beneficiaries to defendant **MARIO BERTONI, M.D.** to purportedly receive home health care supervision, diagnostic tests and other medical examinations or services.

   b. On or about November 23, 2010, defendant **MARIO BERTONI, M.D.**, paid and caused the payment of $3,969.53 to Charles Harris in exchange for

Charles Harris referring Medicare beneficiaries to defendant **MARIO BERTONI, M.D.** to purportedly receive home health care supervision, diagnostic tests and other medical examinations or services.

   c. On or about December 13, 2010, defendant **MARIO BERTONI, M.D.**, paid and caused the payment of $1,088.41 to Charles Harris in exchange for Charles Harris referring Medicare beneficiaries to defendant **MARIO BERTONI, M.D.** to purportedly receive home health care supervision, diagnostic tests and other medical examinations or services.

All in violation of Title 18, United States Code, Section 371.

## **CRIMINAL FORFEITURE**
### **(18 U.S.C. § 982)**

   44. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to the defendants that upon their conviction of any federal health care offense, including conspiracy to commit health care fraud offenses, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses, is subject to forfeiture.

   45. The defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is at least $1,476,827.63.

   46. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 18, United States Code, Section 982(b), if any of the forfeitable

property, or any portion thereof, as a result of any act or omission of a defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, or sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the total value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

ASHLEE CALIGONE MCFARLANE
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE